WM. BEHAM ET AL. V. A. L. GHIO ET AL.

No. 2846.

1. **Surprise—Continuance—Amendment.**—We do not understand that upon the coming in of an amendment presenting new issues the party who claims surprise is entitled to a continuance as a matter of absolute right. If the court be satisfied upon sufficient grounds that there is no surprise, a continuance should be refused if asked on account of such amendment.

2. **Exhibits—Variance.**—Where an instrument declared on is made an exhibit there can not be a variance when it is offered as evidence. It would not matter if the pleader had been mistaken in alleging its legal effect.

3. **Practice—Admission of Incompetent Testimony.**—In a trial before the court without a jury the admission of incompetent testimony is no cause of reversal where other testimony sustains the judgment upon the issue.

4. **Illegal Contract.**—It is not illegal that parties, pending an election to locate the county seat of a county, contracted with the county officers in event of the selection of a certain place to defray the expense of a court house for five years, it not appearing that the amount exceeded the pecuniary outlay incident to the change of location.

5. **Same.**—It is not, however, held that even if the amount stipulated had been in excess of the expenses of the change that the transaction would not be lawful.

6. **Contracts Made on Sunday.**—Contracts, made upon Sunday, when not made in course of a business prohibited upon that day by statutory law, are valid.

7. **Destruction of Leased Premises.**—It seems that a contract of lease of a part of a building, the ground not being leased, would cease upon the destruction of the building by fire, there being nothing to which the lease would attach.

APPEAL from Bowie. Tried below before Hon. John L. Sheppard. The opinion states the case.

*H. C. Hynson* and *Talbot & Turner*, for appellants. —1. A contract or an agreement made for the purpose of influencing the voters in the exercise of their rights in casting their votes at an election legally ordered to be held, is against public policy and is void. And if the contract is calculated to or has a tendency to influence the voters in the casting of their votes, it is void. Wills. Crim. Stat., art. 150; Bish. on Con., arts. 476, 498; Duke v. Asbee, 11 Ire., 112; Machom v. Dow, 32 Vt., 721; Nichols v. Mudgett, 32 Vt., 546; Faywill v. Morins, 4 Mart., 39; Howard v. Jacoby, 3 Pac. Rep., 436; Gray v. Hook, 4 Comst., 440; Robertson v. Robinson, 65 Ala., 610; Hass v. Fenlow, 8 Kans., 601; Hunter v. Nolt, 71 Pa. St., 282; Martin v. Wade, 37 Cal., 168.

2. As between parties to illegal transactions, no one of them can recover for anything done or promised in carrying out the illegal enterprise. It is immaterial what the form of the undertaking may be, such acts, whether they consist of services or in the expenditure of money on request, can not constitute a valid consideration. Seeligson v. Lewis, 65 Texas, 215; Shelton v. Marshall, 16 Texas, 344; Bish. on Con., art. 471; Armstrong v. Toler, 11 Wheat., 261; Marshall v. Railway, 16 How., 314; Tool Co. v. Norris, 2 Wall., 48.

3. The court erred in rendering judgment against each of the defendants for one-eleventh of the whole amount sued for, when the plaintiffs pray for a joint judgment against all of said defendants for nine-elevenths of said sum. Hall v. Jackson, 3 Texas, 305; Pinchain v. Collard, 13 Texas, 333; Denison v. League, 16 Texas, 399; McKey v. Welch, 22 Texas, 390; Wallace v. Bogel, 62 Texas, 636.

4. Contracts made and entered into on Sunday can not be enforced.

*F. M. Henry* and *A. L. Ghio*, for appellees, cited Railway v. Goldberg, 68 Texas, 685; Hopkins v. Upshur, 20 Texas, 89; Doyle v. Glasscock, 24 Texas, 200.

GAINES, ASSOCIATE JUSTICE.—In the year 1885 an election was ordered in Bowie County to determine the question of the removal of the county seat. Boston, the county seat then existing, Texarkana, and two other places were candidates for the permanent location. In September of that year, and before the day fixed for the election, the appellants and appellees, and three others who have not appealed, entered into a joint obligation to pay Bowie County the sum of twenty-five hundred dollars in annual installments of five hundred dollars each on condition that the county seat of the county was located at Texarkana and they failed to provide for the use of the county a suitable court house for the period of five years. The bond was duly acknowledged by the obligors and was filed in the office of the county clerk. At the election Texarkana was selected as the county seat, and thereupon appellees leased to the county as a court house a portion of a building known as Ghio & Henry's opera house for the term of five years. The consideration expressed was " the sum of twenty-five hundred dollars in hand paid." The real consideration was the transfer to appellees by the county judge and the commissioners the bond above described. The demised premises were proved to be worth six hundred dollars per year. They were occupied as a court house from November 11, 1885, until January 21, 1889, when the *house* was destroyed by fire. There were eleven obligors on the bond, and this suit was brought by appellants to recover of their co-obligors nine-elevenths of two thousand dollars, that being the amount of the rent of the leased premises for four years. It resulted in a judgment in favor of appellees against each of the other obligors on the bond for one-eleventh of the rent from November, 1885, to January, 1889, at the rate of five hundred dollars per annum—that is to say, against each for the sum of one hundred and sixty-six and fourteen-one-hundredths dollars.

It appears from the record that upon the filing of the original petition the bond which is made the foundation of the action was properly marked and filed with the petition, and by a proper reference made a part thereof, but that it had been withdrawn by the counsel for plaintiffs for safe keep-

ing and was not again deposited with the papers until the trial had begun. It was offered in evidence and was objected to upon the ground that it varied in tenor and effect from that declared on in the petition. On account of its withdrawal the court declined to consider it a part of the petition, and sustained the objection. Thereupon plaintiffs were permitted to withdraw their announcement and to amend their petition by making the bond a part thereof. They then again announced ready, and the defendants moved the court to continue the case on the ground of surprise. The motion was overruled, and the ruling was excepted to and is now assigned as error. The statement of the trial judge, appended to the bill of exceptions, shows that he knew of his own knowledge that upon an argument upon a demurrer to the petition on a former day the obligation had been read to the court, and that he was satisfied that the counsel for the defendants were apprised of the contents of the instrument. No application was filed showing that it was probable that any additional testimony could be procured to meet the issues presented by the amendment or that any was desired. Under these circumstances we think the court did not err in requiring defendants to proceed with the trial. We do not understand that upon the coming in of an amendment presenting new issues the party who claims surprise is entitled to a continuance as a matter of absolute right. If the court be satisfied upon sufficient grounds that in fact there is no surprise, and that he is as ready to proceed as if the amendment had been filed a sufficient length of time to enable him to prepare his case for trial, and that the application to continue is for delay only, the continuance should be refused.

The second assignment of error is that "The court erred in admitting in evidence, over objections of defendants, the contract or bond offered by plaintiffs marked exhibit 'Z,' because there is a fatal variance between the said instrument offered and the one described in plaintiffs' said petition; and because said contract and exhibit so offered had not been attached to said petition nor filed among the papers of said cause as such before the trial began, and was not so attached and filed until at the very time of the announcement of ready for trial by plaintiffs and defendants."

When the bond by amendment was attached to and made a part of the petition it was not error to admit it in evidence, although the pleader in the body of his petition may have erroneously declared its legal tenor and effect. To say that there is a variance in such a case would be to say that an instrument can vary from itself. The question has been repeatedly decided in this court. Peters v. Crittenden, 8 Texas, 131; Greenwood v. Anderson, Id., 225; Spencer v. McCarty, 46 Texas, 213.

In Pyron v. Grinder, 25 Texas Supp., 162, Judge Wheeler states the ground to be, "that the instrument itself, thus made a part of the petition and filed with it for the inspection of the defendant, must control and

cure any misdescription of it in the body of the petition." So also it is the duty of the court to construe the instrument so declared on and attached itself, and to give it its proper legal tenor and effect, and thereby to control the legal effect as alleged in the petition. It follows that a false allegation as to the legal effect of an instrument annexed to a pleading is cured by the writing itself.

We are of the opinion that if the court erred in admitting the testimony of appellees as to what occurred at a public meeting in Texarkana in regard to leasing the opera house for a court house, it affords no ground for a reversal of the judgment. The case was tried by the court, and there was evidence to sustain the judgment without the aid of this testimony. The uncontroverted facts as shown by the evidence are, that the plaintiffs and defendants bound themselves to furnish a court house for the county in the event that the county seat was removed to Texarkana, or to pay five hundred dollars per annum for five years. The county seat was removed; the defendants did nothing towards complying with the contract, and the plaintiffs performed it and took for their protection a transfer of the bond. It would seem but just that the other obligors should contribute their part of the expense towards reimbursing plaintiffs. The latter did what they, as well as defendants, were bound to do, and what defendants failed to do, and we think they are entitled to receive contribution. It seems to us, therefore, wholly immaterial whether or not the defendants signed the obligation with the understanding that the opera house was to be used for the purpose of a court house.

Appellants' fourth assignment of error raises the question of the legality of the contract evidenced by the bond. It may be admitted that every contract made for the purpose of obstructing a free election of any character, though not positively prohibited by statute, is contrary to public policy and void. But the question arises, is the contract under consideration of that nature? Considerations of convenience and expense are likely to enter into most contests for the location of county seats, and we think it not unusual for individuals directly interested in the question to hold out inducements by way of donations of land or money to influence the action of those who are charged with the duty of making the selection. In fixing the sites of public institutions in our State, the Legislature have authorized such inducements, and made it the duty of the State's agents to take them into consideration in choosing a location.

In case of an election for a county seat we can see no good reason why those favoring any particular locality should not be permitted at least to offer enough to reimburse the county, either in whole or in part, for any additional expense which would result from a removal to such locality. To do so much would serve to remove, at least to a certain extent, the question of expense to the county from the contest, and leave the voters free to vote mainly from considerations of public interest and their own

private convenience. There is nothing in such a result which contravenes the policy of the law. On the contrary, it tends to subserve the public interest. Should it be admitted, therefore, that the offer of donations to secure the removal of a county seat more than sufficient to reimburse the probable expense to the county of such removal is the holding out of inducement to the voters in the way of relief from taxes, which was calculated unduly to influence their votes and to induce them to vote against the general convenience, it would not avail the appellants here, since it is not shown that the amount offered by the bond sued on in this case was such as to bring about any such result. We have no evidence upon that question, and we are not to assume that a contract is illegal because under a certain state of facts, which are not pleaded or proved, it may have been contrary to public policy and void. We do not, however, wish to be understood as holding even that should the amount offered have been more than sufficient to indemnify the county for the expense of removal, the contract would have been against public policy. We have found no case which holds that doctrine. On the contrary, it has been expressly held that such contracts are valid in the courts of last resort of three of the States. Deshon v. Smith, 10 Ia., 212; The State v. Elting, 29 Kans., 397; Hall v. Metcalf, 80 Ky., 552. These decisions seem to be based upon the ground that the location of a county seat is not like the election of an officer, which involves a question of personal fitness, but is mainly a matter of business in which the question of pecuniary advantage or disadvantage to the county is necessarily involved, and in voting upon which every voter has the right to consider his pecuniary interest in the result. See also Pepin Co. v. Prindle, 61 Wis., 301; The State v. Johnson, 52 Ind., 197; Odeneal v. Barry, 24 Miss., 1.

What has already been said we deem sufficient to dispose of the sixth assignment of error.

If the court erred in rendering judgment against each defendant for his proportion of the indebtedness instead of rendering it jointly against all, the judgment is favorable to defendants and they can not complain.

It was pleaded and proved by defendant Hoffman that he signed the contract on Sunday, and it is insisted that upon that ground the contract was void as to him. Contracts made upon Sunday, when not made in course of a business prohibited upon that day by statutory law, are valid. Bish. on Con., sec. 536; Schneider v. Sansom, 62 Texas, 201.

This disposes of appellants' assignments, and we find no error in the judgment which entitles them to a reversal.

Appellees have filed a cross assignment, in which it is claimed that the court erred in confining their recovery to the time which elapsed between the making of the lease and the destruction of the building. They prayed in their petition for a recovery of defendants of their proportional part of the rent for the term of four years. This claim seems to be based upon

the theory that when the plaintiffs had furnished a court room for five years defendants became liable to them for their proportional part of the entire rent, payable, however, in annual installments, and that four installments were due when the amended petition was filed. We do not, however, concur in this view. The lease contains a provision that should the Commissioners Court at any time select another court house the leased premises should revert to the lessors. This gave the court the power at any time to terminate the lease by providing another building for use of the courts and their officers, and it is to be presumed that upon the destruction of the building by fire they at once exercised this power. Moreover it may be that without this provision the legal effect of the contract was that the lease should cease upon the destruction of the building of which the demised premises constituted only a part. The lot was not leased, and it would seem that after the fire there was nothing to which the lease would attach. As we view the case the right of plaintiffs was to demand that their co-obligors, the defendants, should each bear ratably an equal part of the expense incurred in carrying out the joint contract. This was the rent of the rooms during the time they were occupied as a court house. We conclude that the cross assignment of error is not well taken.

There being no error in the judgment it is affirmed.

*Affirmed.*

Delivered November 12, 1889.