## MADDOX v. CLARK.†

(Court of Civil Appeals of Texas. Ft. Worth.
Dec. 6, 1913. Rehearing Denied Jan. 17, 1914.)

**1. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.**

The question of whether false representations were made is for the jury to determine where the evidence thereon was directly conflicting.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

**2. EXCHANGE OF PROPERTY (§ 3*) — REAL PROPERTY—FALSE REPRESENTATIONS.**

If defendant by himself, or through his agent, made positive representations relating to land exchanged which were false and material, and were relied on by plaintiff, and induced him to make the exchange, defendant is responsible therefor, though he stated to plaintiff that he had never seen the land exchanged, and referred him to another as having knowledge thereof, or offered to permit him to personally inspect it.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 3, 7; Dec. Dig. § 3.*]

**3. JUDGMENT (§ 256*)—CONFORMITY TO VERDICT.**

Though the verdict, in an action to recover possession of land, in which defendant prayed the cancellation of a deed therefor executed to plaintiff by fraud, did not specifically find for a cancellation, the judgment properly canceled the deed where the verdict established fraud and all other facts warranting cancellation.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

**4. APPEAL AND ERROR (§ 1069*)—HARMLESS ERROR.**

Any remarks by the foreman of the jury in an action to recover possession of lots exchanged for plaintiff's land, in which defendant alleged false representations as to improvements on plaintiff's land, that he did not think plaintiff's land was of much value, were harmless; its value not being in issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4136, 4138, 4139; Dec. Dig. § 1069.*]

**5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR.**

Admission of incompetent evidence as to what a former owner of the land in controversy had offered to take for it was harmless error; its value not being in issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

**6. EVIDENCE (§ 317*)—HEARSAY.**

In an action to cancel an exchange of land for lots on the ground of fraudulent representations as to improvements on the land, evidence as to what another had told witness after the exchange as to the price such other had once offered to take for the land was incompetent and irrelevant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

**7. CANCELLATION OF INSTRUMENTS (§ 55*)—JUDGMENT.**

Upon setting aside an exchange of land for misrepresentations, after plaintiff had transferred to a bona fide purchaser notes executed by defendant for the difference in the agreed values, the judgment should provide that execution in favor of defendant should not issue for the collection of that part of the judgment in his favor for the value of the notes transferred until he shall pay a part thereof.

[Ed. Note.—For other cases, see Cancellation of Instruments, Dec. Dig. § 55;* Contracts, Cent. Dig. § 1201.]

Appeal from District Court, Knox County; Jo. A. P. Dickson, Judge.

Action by S. B. Maddox against J. P. Clark. From a judgment in part for plaintiff, he appeals. Reformed and affirmed.

D. J. Brookreson, of Benjamin, for appellant. Jas. A. Stephens, of Benjamin, for appellee.

CONNER, C. J. On the 5th day of February, 1913, S. B. Maddox instituted this suit against J. P. Clark in trespass to try title, and for possession of lots 7, 8, and 9, in block 21, and lots 7, 8, 9, 10, and 11, in block 19, of an addition to the town of Knox City, in Knox county. The appellee, Clark, answered, alleging, among other things, that prior to the 19th day of February, 1912, he and his wife were the owners in fee simple of the property sued for, together with lots 3, 4, 5, and 6, in block 24 of said addition; that they were old and ignorant people who could neither read nor write, and that plaintiff took advantage of their ignorance, and, for the purpose of procuring a deed of conveyance to the said property, personally and through his agent, L. P. Bennett, represented to them that he was the owner of 160 acres of land situated in Montague county that was good farming land, of which 40 acres was in cultivation; that said land had a good two-room house and good well of water near said house on said land. It was charged that said representations as to the improvement on said land were false and untrue, but that nevertheless appellee relied upon the same, and was thereby induced to exchange his said property for the Montague county land. It was further alleged that in the exchange appellee also agreed to execute his note for $500 for the difference in the agreed prices of the several properties; that appellant, knowing that appellee could neither read nor write, prepared notes different from those agreed upon, aggregating the sum of $950; that appellant had transferred said notes to a Mr. Tonn, who was an innocent purchaser for value, without notice of the fraud that was perpetrated in securing them; and that therefore said notes constituted a valid outstanding obligation against the appellee. The appellee prayed for a cancellation of the deed that he had executed to appellant, and for the value of any property conveyed thereby that should be found to have been reconveyed by appellant. He also prayed for judgment for the amount of the notes so transferred to Tonn, and for general and equitable relief. The jury returned a verdict for the defendant for all the property for which appellant sued, and for the

value of certain of the lots originally owned by appellee that appellant had conveyed, and for the notes conveyed to Tohn, less certain credits specified in the verdict. Upon this verdict, the court canceled the deed to Maddox, vesting the title of the Montague county land in him, and gave appellee a money judgment as specified in the verdict, and declared a lien upon the Montague county land for the payment of the judgment for the value of the $950 vendor's lien notes.

[1, 2] The principal assignments of error question the sufficiency of the evidence to support the verdict and judgment; but of this we think there can be no doubt. It is true that both appellant and his negotiating agent, L. P. Bennett, denied that they, or either of them, made the representations imputed to them; but appellee just as clearly and circumstantially testified that they were made, and in this he is substantially corroborated by his wife and daughter, who testified to their presence during a part of the negotiations. This presents a simple conflict of testimony which it was the function of the jury to determine. That the representations, if made as alleged by appellee, were material and false and operated to induce appellee to make the conveyance to appellant, is scarcely controverted in the testimony. It can make no difference that both appellant and his agent stated that they had never seen the land in Montague county, and that they referred appellee to a Dr. Smith as one knowing the land, or offered to permit appellee to first visit it. It is sufficient that appellant by himself, or through his agent, made positive representations relating thereto which were false and material, and which were relied upon by appellee, and induced him to make the exchange. See Brand v. Odom, 156 S. W. 547; Morrison v. Cotton, 152 S. W. 866; Farris v. Gilder, 115 S. W. 645; U. S. Gypsum Co. v. Shields, 106 S. W. 724; Wright v. U. S. Mortgage Co., 42 S. W. 789. The court, therefore, committed no error in overruling the motion for a new trial predicated upon an insufficiency of the evidence.

It is also insisted that appellee had ratified the contract of exchange, and was guilty of laches in the institution of the suit. It is sufficient to say, however, that a ratification was not pleaded, and that neither the period of limitation relating to actions to rescind had expired, nor has appellant pleaded or proven any such state of things as would render appellee's suit inequitable.

It is also urged that the judgment of cancellation cannot be sustained, for the reason that the evidence shows that in the contract of exchange appellant assumed the payment of a debt secured by lien on some of the lots transferred to him. The verdict and judgment, however, credit appellant with what he actually paid on this account, and there is no evidence of an acceptance by the creditor of appellant's assumption of the obligation, so that no fixed liability or injustice is made to appear.

[3] Nor do we think the judgment unauthorized by reason of the failure of the verdict to specifically find for a cancellation of the conveyance to appellant. The verdict established the facts warranting the cancellation, and the judgment, therefore, properly declared the legal consequence of the facts so found. To the objection that the rights of the innocent holder (not a party to the suit) of appellee's $950 notes cannot be herein adjudicated, it will be sufficient to say that the court did not undertake to adjudicate or dispose of any right of such purchaser, and that appellant's rights, in so far as they flow from such transfer, have or will be sufficiently guaranteed by the judgment herein.

[4-6] We find no reversible error because of misconduct of the jury or of the court's rulings on the admission of testimony. It is possible to be inferred from the statement of the foreman of the jury that he did not think the Montague county land was of very much value; but the jurors whose affidavits presented the matter denied that the statement of the foreman was considered, or had any influence in bringing about the verdict. Besides, there was no evidence of a misrepresentation of the value of the Montague county land, and no such issue was submitted by the judge of the court, nor did the charge otherwise authorize a verdict in appellee's favor on the ground of a misrepresentation of value. The remark of the foreman of the jury, therefore, which relates alone to the question of value, would seem at most to be harmless, and this conclusion applies as well to appellee's testimony relating to what Dr. Smith told him after the exchange what he (Smith) had once offered to take for the Montague land. Of course the declaration of Smith was incompetent and irrelevant, and should have been excluded; but the value of the land, as stated, was not an issue in the evidence, was not submitted, and but little consequence seems to have been attached to the question during the trial, for we find that appellant himself testified to what a drummer said of the land's value, and appellee, without objection, was permitted to testify that the Montague county land was worth but $3 per acre, basing this conclusion on what he had been "told." We accordingly overrule the assignments raising these questions.

[7] We find one error in the judgment, however, that we think should be corrected. Appellee was awarded, among other things, a money judgment for the face value of the $950 notes executed by him, and subsequently assigned by appellant to an innocent purchaser, as stated, and for the payment of this part of the judgment a lien was declared

in appellee's favor on the Montague county land, with direction for the issuance of execution. Appellant is undoubtedly liable as an indorser to the purchaser of the notes, who also has a lien on the Montague county land restored to appellant by the decree. Appellant and his land are thus subjected to a double liability, which should not be. The judgment should provide that execution in favor of appellee should not issue for the collection of that part of the judgment based upon the value of the $950 vendor's lien notes transferred by appellant until such time, if at all, as appellee shall pay the same, or some part thereof, by virtue of his execution of the notes. The judgment herein will be so corrected; but in all other respects it is affirmed, with costs of appeal taxed against appellee; appellant having urged this defect in the judgment in his motion for a new trial, which was overruled by the court below.

Judgment reformed and affirmed.